Jory L. Trease (USB#4929)
Janci M. Lawes (USB#10102)
**JLT LAW**
140 West 2100 South, Suite 212
Salt Lake City, UT  84115
jory@jltlawut.com
Telephone (801) 596-9400
*Attorneys for Defendant Danny Zuriel Pacheco*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re:   DANNY ZURIEL PACHECO and KELLYANN FOUATZ PACHECO, Debtors. | Bankruptcy No.: 19-22473 JTM (Chapter 7) |
| YAPING LIN   *a/k/a* ENYA LIN, Plaintiffs, vs. DANNY ZURIEL PACHECO, Defendant. | Adversary Proceeding No. : 19-02076 Judge: Joel T. Marker |

## ANSWER TO PLAINTIFF'S AMENDED COMPLAINT FOR DETERMINATION OF DISCHARGEABILITY OF CERTAIN DEBTS

**COMES NOW** the Debtor/Defendant, Danny Zuriel Pacheco (hereinafter referred to as "Defendant", "Pacheco", and/or "Debtor"), by and through his Attorneys of Record, more specifically JLT Law through **JORY L. TREASE**, pursuant to the Federal Rules of Civil Procedure and all other applicable portions of United States Bankruptcy Code and Rules,  and hereby admits, denies, or otherwise responds to the numbered paragraphs of the Plaintiff's

**AMENDED COMPLAINT FOR DETERMINATION OF NON-DISCHARGEABILITY**

**(11 U.S.C. §523(a)(2)(A) and §523(a)(4))** (Docket No. 18) on file herein as follows:[1]

**PARTIES, JURISDICTION AND VENUE**[2] [3]

1.   In response to Paragraph One (¶1) of Plaintiff's Complaint,  the Defendant is not aware of the Plaintiff's residential status at present, and thus can neither admit nor deny such allegations. However, until evidence to the contrary may arise, Defendant does not dispute that the Plaintiff may be a resident of the State of Arizona.

2.   In response to Paragraph Two (¶2) of Plaintiff's Complaint the Defendant admits that he is a resident of Utah County, State of Utah.

3.   In response to Paragraphs Three through Five (¶'s 3 – 5), *inclusively*, of Plaintiff's Complaint,  the Defendant concurs that jurisdiction and venue are appropriately exercised by the present tribunal; and that the present litigation qualifies as a core proceeding under the applicable provisions of the Bankruptcy Code, Rules, and other relevant statutory authority. Furthermore, Defendant hereby consents to having the current matter determined and concluded within this forum.

////

////   *(the remainder of this page has been left intentionally blank for continuity purposes)*

---

[1] **.**    Despite the Plaintiff's pleading being identified as an Amended Complaint, Defendant's responses hereafter will refer to the same generically as the "Complaint".

[2] **.**    For ease of continuity, the Defendant has adopted the organizational divisions set forth within the Plaintiff's  Complaint.  By doing so, Defendant does not consent to, or otherwise admit, any of the implications or other insinuations contained within the Plaintiff's descriptions for the same.  Defendant reserves all rights related to contesting and defending against the content of Plaintiff's descriptive commentary both within the headings and body of the Complaint.

[3] **.**    Defendant specifically notes that additional parties may be discovered through litigation of the current action which may warrant joining such person(s) and entities at that time, but as of the date of responding to the Complaint are not yet known to the Debtor/Defendant.

## **GENERAL ALLEGATIONS**

4.  In response to the allegations contained within Paragraph Six (¶6) of Plaintiff's
Complaint, Defendant currently lacks sufficient information and knowledge to either admit or
deny the accuracy of such allegations. Defendant affirmatively asserts that the available evidence
supports that the Plaintiff's Husband was the original party seeking to invest funds rather than
the Plaintiff herself.

5.  In response to the allegations contained within Paragraph Seven (¶7) of Plaintiff's
Complaint, Defendant denies the same. With regards to any reference to the conduct of the
Defendant personally, he denies each and every other allegation, and every part thereof,
explicitly and implicitly contained within Paragraph Seven (¶7) of the Plaintiff's Complaint.
Defendant further affirmatively asserts that it was the Plaintiff's Husband that established the
initial contact with the business entity Flip2Freedom Investments, Inc., not the Defendant.[4]

6.  In response to Paragraph Eight  (¶8) of Plaintiff's Complaint, Defendant admits in
part and denies in part the allegations contained therein.  Defendant admits that acting solely as a
legally recognized representative of Flip2Freedom Investments, Inc., he responded to the
Plaintiff's Husband's inquiries related to postings on the Cash Buyers Connection and Private
Lender/Investor Network. In response to the specific enumerated subparagraphs within
Paragraph Eight (¶8), the Defendant states:

(a) Defendant denies ever communicating that "he" needed any loan from the
Plaintiff, but specifically and consistently identified at all times that the
transaction was intended on being between a separate business entity and the

---

[4] .  It is believed to be undisputed between the parties that the initial contact by the Plaintiff's Husband
was as a member of the Cash Buyers Connection and Private Lender/Investor Network; and in response to a posting
by Flip2Freedom Investments, Inc., which is also a member of the same identified network; and, not the Defendant
personally.

Plaintiff. Defendant further affirmatively identifies that all discussions associated

with the Arizona Property (*as defined within the Complaint*) arose subsequent to

discussions associated with the NC Property[5] (*as defined within the Complaint*);

 (b)  Defendant denies ever communicating that "he" needed any loan from the

Plaintiff, but specifically and consistently identified at all times that the

transaction was intended on being between a separate business entity and the

Plaintiff. Defendant further affirmatively identifies that all discussions associated

with the NC Property (*as defined within the Complaint*) arose prior to discussions

associated with the Arizona Property (*as defined within the Complaint*).

Defendant further affirmatively asserts that the anticipated transaction related to

the NC Property was originally intended to be between 1034 Dixie, LLC and the

Plaintiff's Husband; and,

 (c) Defendant denies ever communicating that "loaning him" money was ever

intended between the contracting parties.  Defendant affirmatively asserts that the

time period of 3 to 6 months was a time frame proposed by the Plaintiff and her

Husband after discussing the proposed transactions with their independent legal

counsel; and that the original time frame being proposed in the transaction was

approximately nine (9) months.

Defendant denies each and every other allegation, and every part thereof, explicitly and

implicitly contained within Paragraph Eight (¶8) of the Plaintiff's Complaint.

 7.  In response to Paragraph Nine  (¶9) of Plaintiff's Complaint, Defendant admits that

acting solely as a legally recognized representative of Flip2Freedom Investments, Inc.,

---

[5] **.**  It is presumed that the reference to the NC Property as "1304" within the Complaint
(currently and consistently *hereafter*) is simply a typographical error; and, that it was intended to identify
the improved real property located at 1034 Dixie Trail, Raleigh, NC 27607.

subsequent to discussing the potential of Plaintiff's Husband investing in the NC Property project, he provided the Plaintiff with an investment packet for the Arizona Property, including a proposed deed of trust, promissory note, and joint venture agreement.

8.   In response to the allegations contained within Paragraph Ten (¶10) of Plaintiff's Complaint, Defendant currently lacks sufficient information and knowledge to either admit or deny the accuracy of such allegations. Defendant affirmatively asserts that he is informed and believes that Plaintiff sought Counsel with her independent Attorney to assist her in the decision making process related to the transactions referenced within the Complaint. Defendant denies each and every other allegation, and every part thereof, explicitly and implicitly contained within Paragraph Ten (¶10) of the Plaintiff's Complaint attempting to insinuate the Defendant acted in any other capacity than as a legally recognized representative of the separate legal entities identified within the relevant documentation associated with the respective transactions. Defendant denies each and every other allegation, and every part thereof, explicitly and implicitly contained within Paragraph Ten (¶10) of the Plaintiff's Complaint asserting that any funds were intended to be loaned directly to Defendant by the Plaintiff.

9.   Defendant responds to the allegations contained within Paragraph Eleven (¶11) of Plaintiff's Complaint, by stating that while acting as a legally recognized representative of 4020 Colter LLC, he provided the contact information for Driggs Title Agency, Inc. in Scottsdale, Arizona to the Plaintiff. Thereafter, the Plaintiff personally contacted the representatives at Driggs Title Agency to verify the authenticity of the Title Company sufficiently to satisfy the Plaintiff's own investigation; and, only after concluding such inquiry, she arranged for a wire transfer of funds to the Title Company consistent with the instructions provided by the Title Agent.  Defendant denies any and all allegations, and every part thereof, explicitly and implicitly contained within Paragraph Eleven (¶11) asserting that he personally was involved in the

referenced transfer of funds other than facilitating the communication between the Plaintiff and the Title Company itself.

10.    Defendant responds to the allegations contained within Paragraph Twelve (¶12) of Plaintiff's Complaint, by stating that the Plaintiff via text communicated a desire to meet with the Defendant in Arizona. Defendant accommodated the Plaintiff's request. Defendant affirmatively asserts that the purpose for meeting was primarily to physically meet each other; but, also to formally close on the transaction associated with the Arizona Property. The parties discussed many different topics during their meeting; including, but not limited to the potential additional transaction related to the NC Property.[6]

11.    In response to Paragraph Thirteen  (¶13) of Plaintiff's Complaint, Defendant admits that once the Plaintiff expressed a formal interest in reviewing the potential of an additional financial transaction associated with the NC Property; and, acting solely as a legally recognized representative of Flip2Freedom Investments, Inc., he provided the Plaintiff with an investment packet related to the NC Property, which included a proposed deed of trust, promissory note, and joint venture agreement.

12.    Defendant responds to the allegations contained within Paragraph Fourteen (¶14) of Plaintiff's Complaint, by stating that while acting as a legally recognized representative of 1034 Dixie, LLC, he provided the contact information to the Plaintiff for AW Morris Law, PLLC, in Raleigh, North Carolina who was acting as the independent Settlement Agent associated with the transaction. Thereafter, the Plaintiff personally contacted the representatives at AW Morris Law, PLLC to sufficiently satisfy the Plaintiff's own investigation; and, only after concluding such inquiry, she arranged for a wire transfer of funds to the Settlement Agent consistent with the instructions provided by the representatives of AW Morris Law, PLLC.  Defendant denies any

---

[6] .    Since the NC Property was the original potential transaction which the Plaintiff's Husband had expressed an interest in, it is only logical that such a topic would have been raised during the initial in-person meeting between the Plaintiff, her Husband, and the Defendant.

and all allegations, and every part thereof, explicitly and implicitly contained within Paragraph

Fourteen (¶14) asserting that he personally was involved in the referenced transfer of funds other

than facilitating the communication between the Plaintiff and the Settlement Agent's Company.

13.  In response to the allegations contained within Paragraph Fifteen (¶15) of Plaintiff's

Complaint, Defendant denies the same. To clarify, the Defendant affirmatively asserts that the

two (2) independent LLC entities referenced are owned and operated by a separate corporation

named Flip2Freedom Investments, Inc. Defendant admits that he and his wife are the sole

shareholders of the C-Corp.

(i)  In response to the allegations contained within Sub-Paragraph Fifteen (i) of Plaintiff's

Complaint, Defendant currently lacks sufficient information and knowledge to either admit or

deny the accuracy of such allegations. Defendant affirmatively asserts that it is his belief that the

Arizona Limited Liability Company known as 4020 Colter LLC, was legally and properly

established under the laws of the State of Arizona; is solely owned and operated by

Flip2Freedom Investments, Inc.; with the Defendant and his wife being designated as the

Manager and Assistant Manager, respectively. Defendant does not recall specifically who

organized 4020 Colter LLC.

(ii)  In response to the allegations contained within Sub-Paragraph Fifteen (ii) of

Plaintiff's Complaint, Defendant denies the same.  Defendant affirmatively asserts that 1034

Dixie, LLC was organized by Amanda Phillips, and that to Defendant's belief and

understanding, such LLC is legally and properly established under the laws of the State of North

Carolina; is solely owned and operated by Flip2Freedom Investments, Inc.; with the Defendant

and his wife being designated as the Manager and Assistant Manager, respectively.

14.  Defendant admits the allegations contained within Paragraph Sixteen (¶16)  of

Plaintiff's Complaint to the extent that the specified documents therein were executed on Jul 21,

2017 by the Plaintiff, and the Defendant acting solely as a legally recognized representative of

4020 Colter, LLC. Defendant affirmatively asserts that the referenced documents consistently and without exception define the parties to the agreement as Yaping Lin, an Arizona sole proprietorship (PARTY A) and 4020 Colter, LLC, an Arizona LLC (PARTY B); nowhere within the documents does it identify Defendant as a party to such agreement. Defendant denies any and all allegations, and every part thereof, explicitly and implicitly contained within Paragraph Sixteen (¶16) asserting that he has any personally liability pursuant to the specified documents.

15.   Defendant admits the allegations contained within Paragraph Seventeen (¶17)  of Plaintiff's Complaint to the extent that the specified documents therein were executed on Jul 24, 2017 by the Plaintiff, and the Defendant acting solely as a legally recognized representative of 1034 Dixie, LLC. Defendant affirmatively asserts that the referenced documents consistently and without exception define the parties to the agreement as Yaping Lin, an Arizona sole proprietorship (PARTY A) and 1034 Dixie, LLC, a North Carolina, LLC (PARTY B); nowhere within the documents does it identify Defendant as a party to such agreement. Defendant denies any and all allegations, and every part thereof, explicitly and implicitly contained within Paragraph Seventeen (¶17) asserting that he has any personally liability pursuant to the specified documents.

16.   Defendant admits the allegations contained within Paragraph Eighteen (¶18)  of Plaintiff's Complaint in that the Promissory Note associated with the AZ Property transaction was signed by the Defendant in a representative capacity of 4020 Colter, LLC, and the Plaintiff on behalf of her Arizona sole proprietorship.

17.   Defendant admits the allegations contained within Paragraph Nineteen (¶19)  of Plaintiff's Complaint in that the Promissory Note associated with the NC Property transaction

////

////   *(the remainder of this page has been left intentionally blank for continuity purposes)*

-8-

was signed by the Defendant in a representative capacity of 1034 Dixie, LLC, and the Plaintiff on behalf of her Arizona sole proprietorship.[7]

18.   Defendant admits the allegations contained within Paragraph Twenty (¶20)  of Plaintiff's Complaint; specifically that the Promissory Notes for both the AZ Property and NC Property transactions are substantially the same with exception to references to the property and monetary amounts.

19.   Defendant denies each and every allegation, and every part thereof, explicitly and implicitly contained within Paragraph Twenty-One (¶21) of Plaintiff's Complaint. Defendant affirmatively asserts that the AZ Promissory Note contains no provision whatsoever that obligates the Defendant to pay any sum of money to the Plaintiff.[8]

20.   Defendant denies each and every allegation, and every part thereof, explicitly and implicitly contained within Paragraph Twenty-Two (¶22) of Plaintiff's Complaint. Defendant affirmatively asserts that the NC Promissory Note contains no provision whatsoever that obligates the Defendant to pay any sum of money to the Plaintiff.

21.   Defendant admits the allegations contained within Paragraph Twenty-Three (¶23)  of Plaintiff's Complaint in that the JV Agreement associated with the AZ Property transaction was signed by the Defendant in a representative capacity of 4020 Colter, LLC, and the Plaintiff on behalf of her Arizona sole proprietorship.

22.   Defendant admits the allegations contained within Paragraph Twenty-Four (¶24)  of Plaintiff's Complaint in that the JV Agreement associated with the NC Property transaction was

---

[7] .   It is presumed that the reference to "1304" Dixie LLC within the Complaint is simply a typographical error; and, that it was intended to identify the 1034 Dixie, LLC entity.

[8] .   The Defendant reserves the right to challenge the Plaintiff, and her Legal Counsel to identify the specific provision(s) within the Promissory Note(s) upon which they have asserted the allegations contained within Paragraphs 21 and 22 of the Complaint; and to otherwise argue such claims have been asserted without sufficient investigation prior to doing so.

signed by the Defendant in a representative capacity of 1034 Dixie, LLC, and the Plaintiff on behalf of her Arizona sole proprietorship.[9]

23.   Defendant admits the allegations contained within Paragraph Twenty-Five (¶25) of Plaintiff's Complaint; specifically that the JV Agreements for both the AZ Property and NC Property transactions are substantially the same with exception to references to the property and monetary amounts.

24.   Defendant denies each and every allegation, and every part thereof, explicitly and implicitly contained within Paragraph Twenty-Six (¶26) of Plaintiff's Complaint. Defendant affirmatively asserts that the AZ JV Agreement contains no provision whatsoever wherein the Defendant (*i.e.;* "Danny") personally agrees to anything.[10]

25.   Defendant admits the allegation contained within Paragraph Twenty-Seven (¶27) of Plaintiff's Complaint in that the Plaintiff did agree to contribute $100,000.00 into escrow "for acquisition of title to [the Arizona Property]." Defendant affirmatively asserts that the Arizona Property was thereafter acquired, as anticipated by the Parties to the AZ JV Agreement.

26.   Defendant denies each and every allegation, and every part thereof, explicitly and implicitly contained within Paragraph Twenty-Eight (¶28) of Plaintiff's Complaint; and, affirmatively asserts that 4020 Colter, LLC and the Plaintiff were the Parties whom formed the AZ JV Agreement, not the Defendant.

27.   Defendant denies each and every allegation, and every part thereof, explicitly and implicitly contained within Paragraphs Twenty-Nine through Thirty-Seven, inclusively, (¶'s 29 –

---

[9]   .   It is presumed that the reference to "1304" Dixie LLC within the Complaint is simply a typographical error; and, that it was intended to identify the 1034 Dixie, LLC entity.

[10]   .   The Defendant reserves the right to challenge the Plaintiff, and her Legal Counsel to identify the specific provision(s) within the AZ JV Agreement upon which they have asserted the allegations contained within Paragraphs 26, and 28 through 37, inclusively, of the Complaint; and to otherwise argue such claims have been asserted without sufficient investigation prior to doing so.

37) of Plaintiff's Complaint; and, affirmatively asserts that since he was not personally a party to the AZ JV Agreement, he made no such representations to the Plaintiff.

28.   Defendant denies the allegation, explicitly and implicitly contained within Paragraph Thirty-Eight (¶38) of Plaintiff's Complaint.[11]

29.   Defendant denies each and every allegation, and every part thereof, explicitly and implicitly contained within Paragraphs Thirty-Nine and Forty (¶'s 39 & 40) of Plaintiff's Complaint; and, affirmatively asserts that since he was not personally a party to the NC JV Agreement, he made no such representations to the Plaintiff.

30.   Defendant denies the allegation, explicitly and implicitly contained within Paragraph Forty-One (¶41) of Plaintiff's Complaint.

31.   In response to the allegations contained within Paragraph Forty-Two (¶42) of Plaintiff's Complaint, Defendant denies the same. Defendant affirmatively asserts that he has not personally acquired any interest in the AZ Property at any time; rather, Flip2Freedom Investments, Inc. was the entity which acquired a secondary interest in the identified real property since it was the sole owner of 4020 Colter, LLC. Defendant admits that acting solely as a legally recognized representative (*i.e.;* Manager) of 4020 Colter, LLC, he executed documentation on August 4, 2017 to enable the LLC to purchase the AZ Property for the sum of $740,000.

////

////   *(the remainder of this page has been left intentionally blank for continuity purposes)*

////

---

[11] .   The Court has identified during the argument of the prior Motion to Dismiss pursuant to FRCP 60(b), that pursuant to ¶7(a) of each of the respective Joint Venture Agreements, and given the lack of any initials therein, clearly there was no intention between the Parties to provide any such Trust Deed to the Plaintiff.

32. Because Defendant never made a promise to record a trust deed on the AZ Property in the first place, he denies the allegation, explicitly and implicitly contained within Paragraph Forty-Three (¶43) of Plaintiff's Complaint.[12]

33. Defendant denies each and every allegation, and every part thereof, explicitly and implicitly contained within Paragraph Forty-Four (¶44) of Plaintiff's Complaint; and, affirmatively asserts that he at no time personally encumbered the AZ Property in any amount.

34. Since Defendant was never a party to the AZ transaction, he had no personal duty to renovate the Arizona Property. Thus, he denies each and every allegation, and every part thereof, explicitly and implicitly contained within Paragraph Forty-Five (¶45) of Plaintiff's Complaint.

35. Based upon the Defendant's information and knowledge, he believes the AZ Property was foreclosed and sold at auction on or about November 27, 2018; and therefore admits the allegation contained in Paragraph Forty-Six (¶46) of Plaintiff's Complaint.

36. In response to the allegations contained within Paragraph Forty-Seven (¶47) of Plaintiff's Complaint, Defendant denies the same. Defendant affirmatively asserts that he has not personally acquired any interest in the NC Property at any time; rather, Flip2Freedom Investments, Inc. was the entity which acquired a secondary interest in the identified real property since it was the sole owner of 1034 Dixie, LLC. Defendant admits that acting solely as a legally recognized representative (*i.e.;* Manager) of 1034 Dixie, LLC, he executed documentation on or about July 25, 2017 to enable the LLC to purchase the NC Property for the sum of $395,000.

37. Because Defendant never made a promise to record a trust deed on the NC Property in the first place, he denies the allegation, explicitly and implicitly contained within Paragraph Forty-Eight (¶48) of Plaintiff's Complaint.

---

[12]. See immediately preceding Footnote No. 11, as it applies to Defendant's responses to ¶'s 41, 43, and 48 of the Complaint.

38.    Defendant denies each and every allegation, and every part thereof, explicitly and implicitly contained within Paragraph Forty-Nine (¶49) of Plaintiff's Complaint; and, affirmatively asserts that he at no time personally encumbered the NC Property in any amount.

39.    Since Defendant was never a party to the NC transaction, he had no personal duty to renovate the North Carolina Property. Thus, he denies each and every allegation, and every part thereof, explicitly and implicitly contained within Paragraph Fifty (¶50) of Plaintiff's Complaint.

40.    Based upon the Defendant's information and knowledge, he believes the NC Property was foreclosed and sold at auction on or about December 17, 2018; and therefore admits the allegation contained in Paragraph Fifty-One (¶51) of Plaintiff's Complaint.

41.    In response to Paragraph Fifty-Two (¶52) of Plaintiff's Complaint, Defendant admits in part and denies in part the allegations contained therein.  Defendant admits that the Plaintiff received the sum of THIRTY-NINE THOUSAND DOLLARS ($39,000.00) from Flip2Freedom, Inc.  Defendant denies any allegation or insinuation that he paid the aforementioned amount, or any part thereof, from his personal funds. Defendant denies any allegation or insinuation that he has any personal obligation pursuant to the AZ Promissory note referenced by the Plaintiff.  Defendant denies each and every allegation, and every part thereof, explicitly and implicitly contained within Paragraph Fifty-Two (¶52) of Plaintiff's Complaint, not specifically admitted herein.

42.    In response to Paragraph Fifty-Three (¶53) of Plaintiff's Complaint, Defendant admits in part and denies in part the allegations contained therein.  Defendant admits that he has not personally paid any monetary funds associated with the transactions identified within the Plaintiff's Complaint.  Defendant denies any allegation or insinuation that he has a personal responsibility to pay any funds to the Plaintiff in relation to the two promissory notes referenced in Paragraph Fifty-Three (¶53) of the Complaint. Defendant denies each and every allegation,

and every part thereof, explicitly and implicitly contained within Paragraph Fifty-Three (¶53) of Plaintiff's Complaint, not specifically admitted herein.

43.    In response to Paragraph Fifty-Four (¶54) of Plaintiff's Complaint, Defendant admits that he sought protection under the U.S. Bankruptcy Code by filing a bankruptcy petition on April 10, 2019.

44.    Defendant denies each and every allegation, and every part thereof, explicitly and implicitly contained within Paragraph Fifty-Five (¶55) of Plaintiff's Complaint; and, affirmatively asserts that in compliance with the standards of bankruptcy law, he has put forth a good faith effort to identify any and all potential Creditors that may assert the Debtor-in-Bankruptcy may owe a personal liability on a debt owed. Defendant disputes both owing a substantial amount of the persons/entities identified within his Bankruptcy Schedules, and the amount referenced by the Plaintiff in Paragraph Fifty-Five (¶55) of the Complaint.[13]

## FIRST CAUSE OF ACTION
### Objection to Discharge under 11 U.S.C. §523(a)(2)(A)

45.    In response to Paragraph Fifty-Six (¶56) of Plaintiff's Complaint, the Defendant admits, denies, and otherwise responds to the respective previous Paragraphs of Plaintiff's Complaint as contained within said Defendant's prior responses.  Furthermore, no additional factual allegations are contained within Paragraph Fifty-Six (¶56) of Plaintiff's Complaint; and therefore, Defendant neither admits or denies the content of the specified Paragraph.

---

[13].    It is noted that the deadline for Creditors to object to the discharge of the Debtor expired on July 15, 2019; and no potential Creditors, with exception to the Plaintiff herein, objected to the discharge of the Debtor's obligations. Such inaction by those identified within the Debtor's Schedules is a clear indication that the potential Creditors have determined either the Debtor has no personal liability for the debt, or there was no impropriety by the Debtor to warrant further action against him.

46.    In response to Paragraph Fifty-Seven (¶57) of Plaintiff's Complaint, Defendant admits in part and denies in part the allegations contained therein.  Defendant admits that Plaintiff provided the amount of $185,000.00, in relation to the joint ventures identified within the Complaint, thus fulfilling her obligations to contribute such funds. Defendant denies that the payment of such funds represent the entirety of the legal obligations owed by the Plaintiff pursuant to the relevant documents associated with the referenced transactions. Defendant denies that the referenced funds were paid to the Defendant; instead, Defendant affirmatively asserts that all funds paid by the Plaintiff were contributed to third parties other than the Defendant himself.  Defendant denies each and every allegation, and every part thereof, explicitly and implicitly contained within Paragraph Fifty-Seven (¶57) of Plaintiff's Complaint, not specifically admitted herein.

47.    Defendant denies each and every allegation, and every part thereof, explicitly and implicitly contained within Paragraph Fifty-Eight (¶58) of Plaintiff's Complaint. Defendant affirmatively asserts that he had no personal contractual obligations under the two joint venture agreements and two promissory notes identified within the Plaintiff's Complaint.[14]

48.    Defendant denies each and every allegation, and every part thereof, explicitly and implicitly contained within Paragraph Fifty-Nine (¶59) of Plaintiff's Complaint. Defendant affirmatively asserts that he had no personal contractual obligations under the two joint venture agreements and two promissory notes identified within the Plaintiff's Complaint.

49. Defendant denies each and every allegation, and every part thereof, explicitly and implicitly contained within Paragraph Sixty (¶60) of Plaintiff's Complaint.

---

[14].    It is noted that the Court has previously dismissed any and all claims by the Plaintiff's Husband on the basis that no evidence exists to demonstrate any obligation being owed by the Defendant to the Husband, despite a Personal Guarantee between the Defendant and Allen Yuhung Lin dated July 10, 2017.

-15-

50.  With exception to the partial allegation set forth in Paragraph Sixty-One (¶61) of Plaintiff's Complaint, in which it acknowledges that the Defendant was acting "as the manager of the LLCs", which he admits; Defendant denies each and every remaining allegation, and every part thereof, explicitly and implicitly contained within such Paragraph, and each Subparagraph therein.

51.  With exception to the partial allegation set forth in Paragraph Sixty-Two (¶62) of Plaintiff's Complaint, in which it acknowledges that the Defendant "did not intend to record . . . the NC Trust Deed", which he admits; Defendant denies each and every remaining allegation, and every part thereof, explicitly and implicitly contained within such Paragraph, and each Subparagraph therein. In clarification of the Defendant's intention not to record the NC Trust Deed, he affirmatively asserts that the Plaintiff on July 24, 2017 provided a written letter to Annette Monte of First Rehab Lending, LLC indicating that she had no intention of placing a lien on the NC Property; and, based on such correspondence the Defendant acting in his representative capacity of the 1034 Dixie, LLC, did not submit any Trust Deed for recordation.

52.  In response to Paragraphs Sixty-Three through Sixty-Nine, inclusively, (¶'s 63 – 69) Defendant first and foremost affirmatively asserts that he acted solely in a legally recognized representative capacity on behalf of the previously identified business entities within the Complaint, and therefore bore no personal responsibility to the Plaintiff with respect to any of the matters referenced within the Complaint.  Furthermore,  Defendant denies each and every allegation, and every part thereof, explicitly and implicitly contained within Paragraphs Sixty-Three through Sixty-Nine, inclusively, (¶'s 63 – 69) of the Complaint.

////

////   *(the remainder of this page has been left intentionally blank for continuity purposes)*

////

-16-

## SECOND CAUSE OF ACTION
### *Objection to Discharge under 11 U.S.C. §523(a)(4)*

53.   In response to Paragraph Seventy (¶70) of Plaintiff's Complaint, the Defendant admits, denies, and otherwise responds to the respective previous Paragraphs of Plaintiff's Complaint as contained within said Defendant's prior responses.  Furthermore, no additional factual allegations are contained within Paragraph Seventy (¶70) of Plaintiff's Complaint; and therefore, Defendant neither admits or denies the content of the specified Paragraph.

54.   In response to Paragraph Seventy-One  (¶71) of Plaintiff's Complaint, Defendant admits in part and denies in part the allegations contained therein.  Defendant admits that the Plaintiff was fully aware of the fact that the contractual agreements she was entering into as referenced within the Complaint were with distinct and separate Limited Liability Companies (LLC's) independent from the Defendant personally.  The Defendant admits that he was the designated manager of both 4020 Colter, LLC and 1034 Dixie, LLC.  The Defendant denies that he had any ownership interest in either of the aforementioned LLC entities; but rather, Defendant affirmatively asserts Flip2Freedom, Inc. was the sole owner of both LLC's. Defendant denies each and every allegation, and every part thereof, explicitly and implicitly contained within Paragraph Seventy-One (¶71) of Plaintiff's Complaint, not specifically admitted herein.

55.   In response to Paragraph Seventy-Two  (¶72) of Plaintiff's Complaint, Defendant admits that acting solely as a legally recognized representative of 4020 Colter, LLC and 1034 Dixie, LLC, he executed the respective joint venture agreements solely on behalf of the LLC's; and, with no personal liability being expected to be imposed upon him by the Plaintiff.

56.   Defendant denies each and every allegation, and every part thereof, explicitly and implicitly contained within Paragraph Seventy-Three (¶73) of Plaintiff's Complaint. Defendant affirmatively asserts that Plaintiff submitted absolutely no monetary funds whatsoever to the

Defendant personally; and, thus any claim that funds were "entrusted" to Defendant personally in fulfillment of any obligation related to the respective transactions is denied.

57.  In response to Paragraph Seventy-Four (¶74) of Plaintiff's Complaint, Defendant denies the allegation that he, acting as manager of the two independent LLC's, obtained possession and control of the referenced funds. Defendant affirmatively asserts that all of the funds related to the transaction with 4020 Colter, LLC were directly received and disbursed by the appropriate Title Agent affiliated with the purchase of the designated property, without Defendant ever exercising any control or possession of the same. Similarly, Defendant affirmatively asserts that substantially all of the funds related to the transaction with 1034 Dixie, LLC were directly received and disbursed by the appropriate Title Agent affiliated with the purchase of the designated property, without Defendant (acting as legal agent of 1034 Dixie, LLC) ever exercising any control or possession of the same.[15]  Defendant currently lacks sufficient information and knowledge to either admit or deny the accuracy of such allegation regarding the source of the funds Plaintiff claims to have contributed in relation to either of the transactions with the independent LLC's.  Defendant denies each and every allegation, and every part thereof, explicitly and implicitly contained within Paragraph Seventy-Four (¶74) of the Complaint, not specifically admitted herein.

58.  Defendant denies each and every allegation, and every part thereof, explicitly and implicitly contained within Paragraph Seventy-Five (¶75) of the Complaint. Defendant affirmatively asserts that since he was not a party to either transaction, neither of the relevant joint venture agreements impose any personal obligation whatsoever upon him.

_____

[15] .    The Closing documents related to 1034 Dixie transaction are believed to demonstrate that $78,000 of the Plaintiff's contributed funds were applied to the purchase of the real property, leaving approximately $7,000 available for subsequent related costs associated with the project.

59.   Defendant denies each and every allegation, and every part thereof, explicitly and implicitly contained within Paragraphs Seventy-Six through Seventy-Nine, inclusively, (¶'s 76 – 79) of the Complaint.

60.   Defendant denies all allegations and requests, implicitly and explicitly contained within the Prayer portion of Plaintiff's Complaint.

61.  Defendant denies each and every allegation in Plaintiff's Complaint not specifically admitted herein.  Defendant furthermore denies any and all implications, insinuations, and other allegations contained within Plaintiff's Complaint which attempt to assert any wrongful conduct by the Defendant; or, other basis for recovery from the Defendant.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**AS AND FOR SEPARATE AND AFFIRMATIVE
DEFENSES TO THE COMPLAINT, AND TO THE
ALLEGED CAUSES OF ACTION CONTAINED
THEREIN, THIS ANSWERING DEFENDANT ALLEGES:**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### FIRST AFFIRMATIVE DEFENSE

**No Cause of Action Supported:** The Plaintiff's Complaint, and each and every purported claim for relief therein, fails to state facts sufficient to constitute a cause of action, or any cause of action, against this answering Defendant.  The Defendant affirmatively asserts that the allegations within the Complaint are deficient in meeting the rudimentary pleading elements, and are otherwise  insufficient to satisfy the requirements of any cause of action under 11 U.S.C. §523(a)(2)(A) or §523(a)(4), respectively as appropriate to the individual Causes of Action, under the applicable legal standards adopted by the 10th Circuit.

## SECOND AFFIRMATIVE DEFENSE

**Lack of *prima facie* elements:**  Plaintiff has failed to aver sufficient allegations to set forth a cause of action under any of the portions of §523(a)(2).  Under the general portions of §523(a)(2)(A), the Plaintiff has failed to satisfy the *prima facie* elements of such provisions.

## THIRD AFFIRMATIVE DEFENSE

**No "debt" exists, and Plaintiff has no "claim" as such terms are defined within the Bankruptcy Code.**  No contractual relationship has ever existed between the Plaintiff and the Defendant.  The Defendant does not owe a "debt" to the Plaintiff, in that the Defendant has no liability to compensate the Plaintiff as defined by 11 U.S.C. §101(12).  Similarly, the Plaintiff has no right to any "claim" against the Defendant in that he had no lawful duty to perform to Plaintiff's benefit, and Plaintiff has no right to payment from the Defendant as defined by 11 U.S.C. §101(5).  No loan was given to the Defendant. Any and all money was loaned or invested through the respective LLC business entities rather than any individual person.

## FOURTH AFFIRMATIVE DEFENSE

**§523(d) Attorneys Fees:** Defendant affirmatively asserts that as dictated through equitable principles, and consistent with 11 U.S.C. §523(d), upon the successful defense against the allegations asserted by the Plaintiff within the pending Adversary Complaint, the Court shall grant judgment in favor of the debtor for the cost of, and a reasonable attorney's fee for, the proceeding because the position of the Plaintiff is not substantially justified, and there are no special circumstances which would make such an award unjust.  Thus, it is proper and just that the Defendant  be entitled to recoupment of all legal fees and expenses incurred through defense of the present action.  It is inappropriate that the answering Defendant be held responsible for payment of the legal fees and expenses associated with defending the present litigation; and therefore, the Plaintiff should be held accountable to compensate Defendant for all such expenses incurred pursuant to 11 U.S.C. §523(d).  Furthermore,  the Plaintiff should be held

accountable to compensate Defendant for all such expenses identified within the preceding
Affirmative Defenses, pursuant to applicable federal and Utah State Statutes, including but not
limited to, 11 U.S.C. §523(d), U.C.A. §78B-5-825, U.C.A. §78B-5-826, and under equitable and
common law principles of justice.

### FIFTH AFFIRMATIVE DEFENSE

**Liberal interpretation of the Bankruptcy Code in favor of the Debtor:**  In keeping
with the Bankruptcy Code's "fresh start" policy, exceptions to discharge are narrowly construed;
and otherwise liberally interpreted in favor of the Debtor. The Bankruptcy Code is liberally
construed in favor of the Debtor and strictly against the Creditor.  Grounds for denying a
discharge are to be narrowly construed given the severe sanction associated with the relief being
requested.

### SIXTH AFFIRMATIVE DEFENSE

**Defendant not responsible for conduct of third parties:**  Defendant is not responsible
for any conduct, or omission to act,  of any third party; including but not limited to 4020 Colter,
LLC, or 1034 Dixie, LLC, or any business entity to whom the Plaintiff and other third parties
may have invested or otherwise contributed monetary funds. Plaintiff has previously recognized
the independent separation of the Defendant as a person and the identified business entities given
the prior State Court litigation in which she has pursued and obtained a Default Judgment against
one of the aforementioned Limited Liability Companies.

### SEVENTH AFFIRMATIVE DEFENSE

**A Manager of an LLC is not liable for the LLC's debt:** Pursuant to Statute, in each of
the three (3) States involved in the present litigation, a member or manager is not personally
liable, directly or indirectly, by way of contribution or otherwise, for a debt, obligation, or other
liability of the limited liability company solely by reason of being or acting as a member or
manager. (*See:* U.C.A. §48-3a-304; A.R.S. §29-3304; and, North Carolina Statute: § 57D-3-30)

-21-

### EIGHTH AFFIRMATIVE DEFENSE

**No improper conduct by the Defendant:**  Any alleged actions of the Defendant in the present matter do not rise to the legal standards identified within the U.S. Bankruptcy Code which would be applicable to satisfy any claimed exception of the debt (if any) owed to the Plaintiff from being discharged in the underlying Bankruptcy Case.

### NINTH AFFIRMATIVE DEFENSE

**Waiver of a Claim to Pierce the Corporate Veil:** The Complaint asserts no separate cause of action seeking to pierce the corporate veil of either of the identified Limited Liability Companies.  Plaintiff has failed to plead facts sufficient to establish any basis to pierce the corporate veil within the Complaint; such a failure constitutes a waiver of any such claim. Under applicable legal standards, Courts "will only reluctantly and cautiously pierce the corporate veil" even when such relief is properly sought, and the due process rights of the Defendant are properly protected.

### TENTH AFFIRMATIVE DEFENSE

***Res Ipsa Locquiter*:**  "the thing speaks for itself".   The terms of the relevant documents speak for themselves. Defendant asserts that a review of the relevant documentation supports the finding that the agreements at issue before the Court are between separate business entities, and specifically not between the Plaintiff and the Defendant identified within the Adversary Complaint. All the relevant documentation were irrefutably executed by the Defendant as a legally recognized representative of a separate business entity.  The parties to the various documents are clearly delineated. The Defendant was not even a party to the referenced transactions.  Any signature by the Defendant was affixed as designated on behalf of the respective business entities.  Any and all applicable documents were solely between parties other than the Plaintiff and Defendant in the present Adversary Proceeding; no mention of Defendant being liable is referenced within the written documents upon which the Plaintiff bases her

allegations within the Complaint.  The Plaintiff admits on numerous occasions within the confines of the Complaint itself that all funds were contributed to a separate business entity, not to the Defendant personally.

All available evidence supports the fact that the transactions referenced within the pending Adversary Proceeding were between independent business entities rather than the individual parties identified in the Complaint.

### ELEVENTH AFFIRMATIVE DEFENSE

**The Defendant owes no duty of performance to the Plaintiff.**  No legally binding contract exists between the parties to the present litigation.

### TWELFTH AFFIRMATIVE DEFENSE

**Plaintiff consulted independent Legal Counsel:**  Upon information and belief, Defendant affirmatively asserts the Plaintiff relied upon advice from her own independent Legal Counsel prior to entering into either of the investments referenced within the Complaint. Such Legal Counsel directed the Plaintiff in making certain changes to the proposed documents, and demanding additional documents (*i.e.;* a personal guarantee from the Defendant).[16]

### THIRTEENTH AFFIRMATIVE DEFENSE

**Assumption of the Risk:** Plaintiff has assumed the risks attendant to her investment of monetary funds to the independent limited liability companies referenced in the Complaint. As is evident in the policies and procedures adopted solely at the discretion of the Plaintiff, without seeking any independent financial verification, the Plaintiff was aware of the risks that such investments would not be repaid or result in any financial return; and thus, she has presumably

---

[16] .     It is noted that the personal guarantee suggested by the Plaintiff's Attorney was ultimately executed only between the Defendant herein and the Plaintiff's Husband, who has previously been ruled to have no claims against the Defendant since he contributed no funds in relation to either of the underlying transactions. All claims by the Plaintiff's Husband have been previously dismissed by the Court.

adjusted and adopted policies and procedures to accommodate the potential for investment losses.

## FOURTEENTH AFFIRMATIVE DEFENSE

**Plaintiff's reliance is neither reasonable nor justifiable.** Sole reliance upon representations of the Debtor/Defendant by a financially stable individual such as the Plaintiff, and her principal agent(s), is neither reasonable nor justifiable. Discovery will be utilized to identify that the Plaintiff has engaged in unreasonable business and investment practices by (at a minimum) failing to adequately investigate the fundamental nature of the entire premise and underlying factual patterns associated with the monetary contributions to a newly established business enterprise with no history in exchange for a speculative return on such investment. The Plaintiff's entire financial portfolio and history of prior investments and other business dealings will demonstrate that her reliance was less than justifiable under the present conditions.

## FIFTEENTH AFFIRMATIVE DEFENSE

**Plaintiff is not justified in her conduct.** She is an experienced investor, capable of ascertaining lending opportunities based on the viability of receiving a return on her investment. She has failed to adequately investigate, on multiple occasions, the financial status of the independent limited liability companies identified within the Adversary Complaint prior to contributing monetary funds thereto.

## SIXTEENTH AFFIRMATIVE DEFENSE

**Unclean Hands:** Plaintiff has unclean hands with regard to the matters and events referenced in the Complaint filed herein, and with regard to other matters related thereto, and Plaintiff is therefore entitled to nothing.

## SEVENTEENTH AFFIRMATIVE DEFENSE

**Improper conduct by the Plaintiff.** The Plaintiff, and her representative agent(s), have previously established a personal course of conduct in relation to other litigation tactics and matters which will be investigated to illustrate the true motives and character of the Plaintiff in the present instance as well.

## EIGHTEENTH AFFIRMATIVE DEFENSE

**Plaintiff had no expectation of receiving a Trust Deed on either of the subject properties.** Paragraph 7(a) of the respective Joint Venture Agreements discuss the expectation of a Second Lien Deed of Trust on the property. Such paragraphs are void of any initials which represent no such Deed of Trust was contemplated by the contracting Parties.

## NINETEENTH AFFIRMATIVE DEFENSE

**Interference by the Plaintiff and her agents:** the Plaintiff and agents acting on her behalf, took steps that interfered with the limited liability companies identified within the Complaint from being able to mitigate the issues and otherwise take remedial steps in regards to the properties; including, but not limited to, interference with efforts to refinance the properties, locate contractors/subcontractors, *etc.*

## TWENTIETH AFFIRMATIVE DEFENSE

**No causative link to conduct by the Defendant:** Any claimed losses or damages by the Plaintiff bears insufficient causative link to any action or conduct by the Defendant; rather, any such losses or damages were caused by fluctuations in the particular market and industry for the business entities that the Plaintiff was investing; and all such factors were beyond the control of the Defendant.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

**Actions of Defendant do not support granting relief requested:**  Any alleged actions of the Defendant in the present matter do not rise to the legal standards identified within the U.S. Bankruptcy Code, the Tenth Circuit, or the statutes of the State of Utah, which would be applicable to satisfy any claimed relief by the Plaintiff against the Defendant.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

**Good Faith Conduct of the Defendant:** Defendant has acted properly. Defendant did not, and does not,  owe any duty to the Plaintiff.  However, if any such duty is determined to have existed, Defendant has conducted himself in all respects, reasonably, with due diligence and in good faith in the observance of any duty which he may have owed to the Plaintiff herein. Any and all alleged statements, actions, or conduct attributed to this answering Defendant, if made, were truthful and made in good faith, honestly, and not maliciously.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

**Defendant's true intentions are demonstrated in the payment submitted to the Plaintiff.**  Performance in good faith: Defendant, acting in the representative capacity of a business entity, paid Plaintiff $39,000.00, even though neither of the respective projects identified in the Complaint were completed. Such efforts are demonstrative of a lack of misrepresentation rather than the intentional conduct alleged in the Complaint.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

**The appropriate time for viewing 523(a)(2)(A) claims is at the purported time of the asserted misrepresentation(s); not at any subsequent time thereafter.** The applicable time period for determination of the prima facie elements of the Plaintiff's Cause of Actions is at the time of entering into the asserted transaction. Again, the Defendant was not a party to the real estate transactions, and thus did not make any personal representations to the Plaintiff.  At the

time the Parties to the Joint Venture Agreements entered into the independent transactions, the evidence supports that the individual limited liability companies intended on performance under the agreements, including repaying any such amounts owed thereunder; and that was the predicate upon which the parties entered the relationship.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

**Breach of Contract is insufficient for a declaration of non-dischargeability.** Simply breaking one's contractual obligations does not evidence fraudulent intent under the discharge exception for debts obtained by false representations under 523(a)(2)(A).

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

**Totality of the circumstances is the proper standard.** The Court considers conduct of the parties in context, and views the same on the standard of the totality of the circumstances.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

**The funds invested by the Plaintiff were used for the purpose intended and identified within the Parties Joint Venture Agreements.** The Properties referenced within the Joint Venture Agreements were purchased; and the funds invested by the Plaintiff were devoted almost entirely to the purchase of the respective properties as contemplated by the Parties to the Joint Venture Agreements.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

**Plaintiff specifically authorized the respective Title Agents to disburse the funds she invested.** All funds provided by the Plaintiff in conjunction with the respective Joint Venture Agreements were specifically authorized by Plaintiff to be disbursed by the Title Agent closing the independent real property transactions identified within the Joint Venture Agreements. Defendant did not act as a intermediary on behalf of the Plaintiff, nor was he the recipient of any funds paid in accordance with the Joint Venture Agreement(s).

## TWENTY-NINTH AFFIRMATIVE DEFENSE

**Defendant has acted reasonably.** Defendant has acted reasonably in discharging any duty he may have owed to the Plaintiff in this case; of which he asserts he owes none. Defendant's conduct is directly contrary to any asserted claim of deception, misrepresentation, or improper intent within any relevant relationship between the parties.

## THIRTIETH AFFIRMATIVE DEFENSE

**Key factors were beyond any control of the Defendant.** Any diminution of value of the real estate referenced in the Joint Venture Agreements within the Complaint represents a combination of an act of deity, market fluctuations, inability to locate and secure adequate laborers, declination of the real estate industry, and economic variations in general within the United States; all of which, the Defendant had no control over.

## THIRTY-FIRST AFFIRMATIVE DEFENSE

**"Flipping houses" is risky, speculative, and otherwise uncertain.** Substantial Factors associated with the activities related to purchasing, remodeling, and subsequently marketing the property are beyond the control of those that participate in such speculative efforts. The Real Estate Market represents a constantly changing commodity. Any terms or conditions associated with a previous or future purchase sales transaction, including but not limited to the sales price of the referenced real estate, has no bearing on the true market value of the home at any other time than the date upon which that particular sales transaction occurred.

## THIRTY-SECOND AFFIRMATIVE DEFENSE

**Res Judicata/Collateral Estoppel:** The doctrines of *res judicata* and *collateral estoppel* prohibit all parties and their privies from relitigating issues which were raised or could have been raised in a previous action. During the Defendant's prior Motion under FRCP60(b), the Court identified that each of the respective JV Agreements clearly contradict the Plaintiff's claim that

she was entitled to a Trust Deed on either of the parcels of real property. Since the Court has

ruled on this matter, any such claim(s) by the Plaintiff are unfounded. Paragraph Seven [¶7(a)] of

the respective JV Agreements, specifically identifies no such Trust Deed was intended.

### THIRTY-THIRD AFFIRMATIVE DEFENSE

**Fraud Must be Particularly Pled:** At least one of the causes of action purportedly

contained within the Plaintiff's Complaint are founded upon a common allegation that the

Debtor/Defendant acted with a fraudulent intent or otherwise committed fraud in the

procurement of specified promissory notes or personal loans.  Plaintiff's pleading is vague and

lacks the particularity required by Bankruptcy Rule 7009(b).  The Complaint fails to meet the

fundamental tests of properly pleading fraud under Rule 9(b), Fed. R. Civ. P.  The Complaint

also fails to state allegations of fact sufficient in particularity and clarity to fairly and reasonably

advise the Debtor/Defendant of the "circumstances constituting fraud."  Rule 9(b) F. R. Civ. P.

*See:* In re Edmonds, 924 F.2d 176, 180 (10th Cir. 1991)(Fed. R. Bankr. P. 7009, incorporating

Fed. R. Civ. P. 9(b)(1), requires that fraud be alleged with particularity, including allegations of

the "time, place and contents of the false representations, the identity of the party making the

false statement and the consequences thereof"); In re Stone, 1984 Bankr. LEXIS 4472 (bky. D.

Utah 1984)(Section 523 requires that fraud be pled with particularity); In re Eilertsen, 2003

Bankr. LEXIS 324 (Bky. D. Utah 2003)(fraud must be pled with particularity under R. 7009).

The Complaint is deficient in setting forth any particular allegations associated with any specific

loan to which the Plaintiff claims the Defendant acted wrongfully.

### THIRTY-FOURTH AFFIRMATIVE DEFENSE

**Sanctions under Bankruptcy Rule 9011:**  The present Adversary Proceeding is not well

grounded in fact, has been asserted without sufficient investigation into the matter, and is

otherwise being sought primarily for the improper purposes to harass, cause unnecessary delay,

and/or needlessly increase the costs of litigation for the Defendant.  Plaintiff has failed to

adequately investigate the relevant facts and legal issues prior to commencing the present litigation. Thus, upon mounting a successful defense, it is appropriate that the Court impose appropriate sanctions under Bankruptcy Rule 9011, and other procedural guidelines, against the Plaintiff, and her Legal Counsel, to assure Defendant does not suffer any financial damages in the matter, and to compensate the Debtor/Defendant for the additional expenses, plus an additional amount to assure that Plaintiff, nor her Legal Counsel,  does not repeat such conduct in the future.  In this sense, Defendant agrees with the Plaintiff's request for "granting such other relief that the Court deems just and proper under the circumstances" as claimed within the Plaintiff's Prayer for Relief.

## THIRTY-FIFTH AFFIRMATIVE DEFENSE

**RECIPROCAL ATTORNEYS FEES/ §105 Relief:** Defendant affirmatively asserts that as dictated through equitable principles, and consistent with the Court's inherent powers within 11 U.S.C. §105, given the totality of the circumstances surrounding the present case, no substantial justification exists for the Plaintiff to commence or prosecute the present litigation. Thus, it is proper and just that the Defendant be entitled to recoupment of all legal fees and expenses incurred through defense of the present action.  It is inappropriate that the answering Defendant be held responsible for payment of the legal fees and expenses associated with defending the present litigation; and therefore, the Plaintiff should be held accountable to compensate Defendant for all such expenses incurred pursuant to 11 U.S.C. §105.  Furthermore, the Plaintiff should be held accountable to compensate Defendant for all such expenses identified within the immediately preceding sentences pursuant to applicable federal and Utah State Statutes, including but not limited to, 11 U.S.C. §105, U.C.A., §78B-5-825, U.C.A. §78B-5-826, contractual principles, and under equitable and common law principles of justice.

## THIRTY-SIXTH AFFIRMATIVE DEFENSE

The Defendant reserves the right to add such further and other defenses as may be applicable on the basis of the facts to be determined through full and complete discovery.

**WHEREFORE,** having fully responded to the allegations contained within Plaintiff's Amended Adversary Complaint, the Defendant, Danny Zuriel Pacheco, respectfully prays that the Court enter an order:

1. Dismissing Plaintiff's adversary proceeding, including each and every cause of action set forth therein, with prejudice;

2. Granting a general Discharge in the underlying lead bankruptcy case , including it's applicability to the Plaintiff herein; which has been improperly delayed causing further harm to the Debtor's credit due solely by the Plaintiff's current Adversary Proceeding, thus impeding the Debtor's "fresh start" as contemplated by the foundational provisions of the U.S. Bankruptcy Code;

3. Awarding the Debtor/Defendant a monetary judgment against the Plaintiff, representing the costs and attorney's fees incurred in defense hereof, in an amount to be no less than TWENTY-FIVE THOUSAND DOLLARS AND NO CENTS ($25,000.00), and such further amounts as proven through the evidentiary process; plus an additional amount pursuant to 11 U.S.C. §523(d), 11 U.S.C. §105, and other applicable provisions of federal and Utah State statutes; and,

4. For such other and further relief as the court deems just and appropriate under the premises.

**RESPECTFULLY SUBMITTED AND DATED** this 3rd day of March, 2020.

_/s/ Jory L. Trease_____

Jory L. Trease
Attorney for Defendant/Debtor
Danny Zuriel Pacheco

-31-

# CERTIFICATE OF SERVICE

I hereby certify that on March 5, 2020, I electronically filed the foregoing ANSWER TO PLAINTIFF'S AMENDED COMPLAINT FOR DETERMINATION OF DISCHARGEABILITY OF CERTAIN DEBTS (Docket No. 18) with the United States Bankruptcy Court for the District of Utah by using the CM/ECF system.  I further certify that the parties of record in this case as identified below, are registered CM/ECF users and will be served through the CM/ECF system.

- Adam S. Affleck adam-affleck@rbmn.com

- John E. Keiter john-keiter@rbmn.com

- J. Grant Moody jgmoodylaw@cs.com

- Jory L. Trease caseinfo.jtbankruptcy@gmail.com , jorytrease@msn.com ; janci.jtbankruptcy@gmail.com ; myecfemail.jtbankruptcy@gmail.com ; r47629@notify.bestcase.com

- **United States Trustee USTPRegion19.SK.ECF@usdoj.gov**


**By U.S. mail** – I further certify that on March 5, 2020, I caused the foregoing document to be sent by United States mail, first class postage prepaid, to the following at the addresses set forth below:

- ■ **NONE**
- ❑ **Manual Notice List:**
- ❑ **All parties on the Court's official case matrix (attached)**


**/s/ Jory L. Trease**


Pacheco.Answer.wpd
JLT/dm

-32-