Yaping Lin aka Enya Lin
8203 W Oraibi Dr. Apt2085
Peoria, AZ 85382
(801) 722-5255
Yaping47@gmail.com
Plaintiff in pro per

*Fed Ex*
FILED US Bankruptcy Court-UT
APR 15 2021 AM 9:02
*KN*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>Danny Zuriel Pacheco and<br>Kellyann F. Pacheco,<br><br>       Debtors. | Bankruptcy Case No. 19-22473<br><br>(Chapter 7)<br><br>Adversary Proceeding No. 19-2076<br><br>Judge Joel T. Marker |
| Yaping Lin, aka Enya Lin,<br><br>       Plaintiff,<br><br>  vs.<br><br>Danny Zuriel Pacheco,<br><br>       Defendant. | |
| **PRETRIAL ORDER** | |



This matter having come before the court on March 25, 2021, at a pretrial conference held before the Honorable Judge Joel T. Marker pursuant to Fed. R. Bankr. P. 7016; Plaintiff, Enya Lin appeared on her own behalf; Attorney, Jory L. Trease appeared as counsel for the Defendant, Danny Pacheco. The following action was taken:

1. **JURISDICTION.** The jurisdiction of the court is properly invoked under 28 U.S.C. § 1334. The Parties consent to entry of a final judgment or order by the bankruptcy judge. The jurisdiction of the court is not disputed and is hereby determined to be present.

2. **VENUE.** Venue is laid in the Central Division of the District of Utah.

3. **GENERAL NATURE OF THE CLAIMS OF THE PARTIES.**

   a. **Plaintiff's claims:**

   Plaintiff seeks non-dischargeability of a debt owed to her by Defendant pursuant to 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(4), which arose under two Joint Venture Agreements entered into between Plaintiff and 4020 Colter LLC and 1304 Dixie LLC, each of which Defendant was the owner and manager.

   b. Defendant's claims:

   i. **No Cause of Action Supported:** The Plaintiff's Complaint, and each and every purported claim for relief therein, fails to state facts sufficient to constitute a cause of action, or any cause of action, against this answering Defendant. The Defendant affirmatively asserts that the allegations within the Complaint are deficient in meeting the rudimentary pleading elements, and are otherwise insufficient to satisfy the requirements of any cause of action under 11 U.S.C. §523(a)(2)(A)

or §523(a)(4), respectively as appropriate to the individual Causes of
Action, under the applicable legal standards adopted by the 10th Circuit.

ii. **Lack of _prima facie_ elements:** Plaintiff has failed to aver sufficient
allegations to set forth a cause of action under any of the portions of
§523(a)(2). Under the general portions of §523(a)(2)(A), the Plaintiff
has failed to satisfy the _prima facie_ elements of such provisions.

iii. **No "debt" exists, and Plaintiff has no "claim" as such terms are
defined within the Bankruptcy Code.** No contractual relationship has
ever existed between the Plaintiff and the Defendant. The Defendant
does not owe a "debt" to the Plaintiff, in that the Defendant has no
liability to compensate the Plaintiff as defined by 11 U.S.C. §101(12).
Similarly, the Plaintiff has no right to any "claim" against the
Defendant in that he had no lawful duty to perform to Plaintiff's
benefit, and Plaintiff has no right to payment from the Defendant as
defined by 11 U.S.C. §101(5).   No loan was given to the Defendant.
Any and all money was loaned or invested through the respective LLC
business entities rather than any individual person.

iv. **§523(d) Attorneys Fees:** Defendant affirmatively asserts that as
dictated through equitable principles, and consistent with 11 U.S.C.
§523(d), upon the successful defense against the allegations asserted by
the Plaintiff within the pending Adversary Complaint, the Court **shall**
grant judgment in favor of the debtor for the cost of, and a reasonable
attorney's fee for, the proceeding because the position of the Plaintiff is

not substantially justified, and there are no special circumstances which

would make such an award unjust. Thus, it is proper and just that the

Defendant  be entitled to recoupment of all legal fees and expenses

incurred through defense of the present action. It is inappropriate that

the answering Defendant be held responsible for payment of the legal

fees and expenses associated with defending the present litigation; and

therefore, the Plaintiff should be held accountable to compensate

Defendant for all such expenses incurred pursuant to 11 U.S.C.

§523(d). Furthermore, the Plaintiff should be held accountable to

compensate Defendant for all such expenses identified within the

Affirmative Defenses set forth within the Defendant's responsive

pleading, pursuant to applicable federal and Utah State Statutes,

including but not limited to, 11 U.S.C. §523(d), U.C.A. §78B-5-825,

U.C.A. §78B-5-826, and under equitable and common law principles of

justice.

v.   **Liberal interpretation of the Bankruptcy Code in favor of the**

**Debtor:** In keeping with the Bankruptcy Code's "fresh start" policy,

exceptions to discharge are narrowly construed; and otherwise liberally

interpreted in favor of the Debtor. The Bankruptcy Code is liberally

construed in favor of the Debtor and strictly against the Creditor.

Grounds for denying a discharge are to be narrowly construed given the

severe sanction associated with the relief being requested.

vi. **Defendant not responsible for conduct of third parties:** Defendant is not responsible for any conduct, or omission to act, of any third party; including but not limited to 4020 Colter, LLC, or 1034 Dixie, LLC, or any business entity to whom the Plaintiff and other third parties may have invested or otherwise contributed monetary funds. Plaintiff has previously recognized the independent separation of the Defendant as a person and the identified business entities given the prior State Court litigation in which she has pursued and obtained a Default Judgment against one of the aforementioned Limited Liability Companies.

vii. **A Manager of an LLC is not liable for the LLC's debt:** Pursuant to Statute, in each of the three (3) States involved in the present litigation, a member or manager is not personally liable, directly or indirectly, by way of contribution or otherwise, for a debt, obligation, or other liability of the limited liability company solely by reason of being or acting as a member or manager. (*See:* U.C.A. §48-3a-304; A.R.S. §29-3304; and, North Carolina Statute: § 57D-3-30)

viii. **No improper conduct by the Defendant:** Any alleged actions of the Defendant in the present matter do not rise to the legal standards identified within the U.S. Bankruptcy Code which would be applicable to satisfy any claimed exception of the debt (if any) owed to the Plaintiff from being discharged in the underlying Bankruptcy Case.

ix. **Waiver of a Claim to Pierce the Corporate Veil:** The Complaint asserts no separate cause of action seeking to pierce the corporate veil

of either of the identified Limited Liability Companies. Plaintiff has failed to plead facts sufficient to establish any basis to pierce the corporate veil within the Complaint; such a failure constitutes a waiver of any such claim. Under applicable legal standards, Courts "will only reluctantly and cautiously pierce the corporate veil" even when such relief is properly sought, and the due process rights of the Defendant are properly protected.

x. *Res **Ipsa Locquiter**:* "the thing speaks for itself". The terms of the relevant documents speak for themselves. Defendant asserts that a review of the relevant documentation supports the finding that the agreements at issue before the Court are between separate business entities, and specifically not between the Plaintiff and the Defendant identified within the Adversary Complaint. All the relevant documentation were irrefutably executed by the Defendant as a legally recognized representative of a separate business entity. The parties to the various documents are clearly delineated. The Defendant was not even a party to the referenced transactions. Any signature by the Defendant was affixed as designated on behalf of the respective business entities. Any and all applicable documents were solely between parties other than the Plaintiff and Defendant in the present Adversary Proceeding; no mention of Defendant being liable is referenced within the written documents upon which the Plaintiff bases her allegations within the Complaint. The Plaintiff admits on numerous

occasions within the confines of the Complaint itself that all funds were

contributed to a separate business entity, not to the Defendant

personally. All available evidence supports the fact that the transactions

referenced within the pending Adversary Proceeding were between

independent business entities rather than the individual parties

identified in the Complaint.

xii.   **The Defendant owes no duty of performance to the Plaintiff.**   No

legally binding contract exists between the parties to the present

litigation.

xiii.   **Plaintiff consulted independent Legal Counsel:**   The Plaintiff relied

upon advice from her own independent Legal Counsel prior to entering

into either of the investments referenced within the Complaint. Such

Legal Counsel directed the Plaintiff in making certain changes to the

proposed documents, and demanding additional documents (*i.e.;* a

personal guarantee from the Defendant). Plaintiff did not rely on any

information communicated by the Defendant, she engaged independent

Legal Counsel, and other third parties, to advise her prior to entry into

any joint venture agreement referenced in the current litigation.

xiv.   **Plaintiff chose to enter into the independent joint ventures after**

**consulting with her husband, not the Defendant herein**. The

business transactions associated with the current litigation were

intended on being between the Plaintiff's Husband and the separate

business entities referenced in the join venture agreements. It is noted

that the personal guarantee suggested by the Plaintiff's prior Attorneys were ultimately executed only between the Defendant herein and the Plaintiff's Husband, who has previously been ruled to have no claims against the Defendant since he contributed no funds in relation to either of the underlying transactions. All claims by the Plaintiff's Husband have been previously dismissed by the Court.

xv.     **Assumption of the Risk:** Plaintiff has assumed the risks attendant to her investment of monetary funds to the independent limited liability companies referenced in the Complaint. As is evident in the policies and procedures adopted solely at the discretion of the Plaintiff, without seeking any independent financial verification, the Plaintiff was aware of the risks that such investments would not be repaid or result in any financial return; and thus, she has presumably adjusted and adopted policies and procedures to accommodate the potential for investment losses.

xvi.    **Plaintiff's reliance is neither reasonable nor justifiable.** Sole reliance upon representations of the Debtor/Defendant by a financially stable individual such as the Plaintiff, and her principal agent(s), is neither reasonable nor justifiable.  Discovery will be utilized to identify that the Plaintiff has engaged in unreasonable business and investment practices by (at a minimum) failing to adequately investigate the fundamental nature of the entire premise and underlying factual patterns associated with the monetary contributions to a newly

8

established business enterprise with no history in exchange for a speculative return on such investment. The Plaintiff's entire financial portfolio and history of prior investments and other business dealings will demonstrate that her reliance was less than justifiable under the present conditions.

xvii.    **Plaintiff is not justified in her conduct.** She is an experienced investor, capable of ascertaining lending opportunities based on the viability of receiving a return on her investment. She has failed to adequately investigate, on multiple occasions, the financial status of the independent limited liability companies identified within the Adversary Complaint prior to contributing monetary funds thereto.

xviii.   **Unclean Hands:** Plaintiff has unclean hands with regard to the matters and events referenced in the Complaint filed herein, and with regard to other matters related thereto, and Plaintiff is therefore entitled to nothing.

xix.     **Improper conduct by the Plaintiff.** The Plaintiff, and her representative agent(s), have previously established a personal course of conduct in relation to other litigation tactics and matters which will be investigated to illustrate the true motives and character of the Plaintiff in the present instance as well.

xx.      **Plaintiff had no expectation of receiving a Trust Deed on either of the subject properties.** Paragraph 7(a) of the respective Joint Venture Agreements discuss the expectation of a Second Lien Deed of Trust on

the property. Such paragraphs are void of any initials which represent

no such Deed of Trust was contemplated by the contracting Parties.

xxi. **Interference by the Plaintiff and her agents:** the Plaintiff and agents

acting on her behalf, took steps that interfered with the limited liability

companies identified within the Complaint from being able to mitigate

the issues and otherwise take remedial steps in regards to the

properties; including, but not limited to, interference with efforts to

refinance the properties, locate contractors/subcontractors, *etc.*

xxii. **No causative link to conduct by the Defendant:** Any claimed losses

or damages by the Plaintiff bears insufficient causative link to any

action or conduct by the Defendant; rather, any such losses or damages

were caused by fluctuations in the particular market and industry for

the business entities that the Plaintiff was investing; and all such factors

were beyond the control of the Defendant.

xxiii. **Actions of Defendant do not support granting relief requested:** Any

alleged actions of the Defendant in the present matter do not rise to the

legal standards identified within the U.S. Bankruptcy Code, the Tenth

Circuit, or the statutes of the State of Utah, which would be applicable

to satisfy any claimed relief by the Plaintiff against the Defendant.

xxiv. **Good Faith Conduct of the Defendant:** Defendant has acted properly.

Defendant did not, and does not, owe any duty to the

Plaintiff. However, if any such duty is determined to have existed,

Defendant has conducted himself in all respects, reasonably, with due

diligence and in good faith in the observance of any duty which he may

have owed to the Plaintiff herein.  Any and all alleged statements,

actions, or conduct attributed to this answering Defendant, if made,

were truthful and made in good faith, honestly, and not maliciously.

xxvi.   **Defendant's true intentions are demonstrated in the payment**

**submitted to the Plaintiff.** Performance in good faith: Defendant,

acting in the representative capacity of a business entity, paid Plaintiff

$39,000.00, even though neither of the respective projects identified in

the Complaint were completed. Such efforts are demonstrative of a lack

of misrepresentation rather than the intentional conduct alleged in the

Complaint.

xxvii.  **The appropriate time for viewing 523(a)(2)(A) claims is at the**

**purported time of the asserted misrepresentation(s); not at any**

**subsequent time thereafter.** The applicable time period for

determination of the prima facie elements of the Plaintiff's Cause of

Actions is at the time of entering into the asserted transaction. Again,

the Defendant was not a party to the real estate transactions, and thus

did not make any personal representations to the Plaintiff.  At the time

the Parties to the Joint Venture Agreements entered into the

independent transactions, the evidence supports that the individual

limited liability companies intended on performance under the

agreements, including repaying any such amounts owed thereunder;

and that was the predicate upon which the parties entered the
relationship.

xxviii. **Breach of Contract is insufficient for a declaration of non-
dischargeability.** Simply breaking one's contractual obligations does
not evidence fraudulent intent under the discharge exception for debts
obtained by false representations under 523(a)(2)(A).

xxix. **Totality of the circumstances is the proper standard.** The Court
considers conduct of the parties in context, and views the same on the
standard of the totality of the circumstances.

xxx. **The funds invested by the Plaintiff were used for the purpose
intended and identified within the Parties Joint Venture
Agreements.** The Properties referenced within the Joint Venture
Agreements were purchased; and the funds invested by the Plaintiff
were devoted almost entirely to the purchase of the respective
properties as contemplated by the Parties to the Joint Venture
Agreements.

xxxi. **Plaintiff specifically authorized the respective Title Agents to
disburse the funds she invested.** All funds provided by the Plaintiff in
conjunction with the respective Joint Venture Agreements were
specifically authorized by Plaintiff to be disbursed by the Title Agent
closing the independent real property transactions identified within the
Joint Venture Agreements. Defendant did not act as a intermediary on

behalf of the Plaintiff, nor was he the recipient of any funds paid in accordance with the Joint Venture Agreement(s).

xxxii. **Defendant has acted reasonably.** Defendant has acted reasonably in discharging any duty he may have owed to the Plaintiff in this case; of which he asserts he owes none. Defendant's conduct is directly contrary to any asserted claim of deception, misrepresentation, or improper intent within any relevant relationship between the parties.

xxxiii. **Key factors were beyond any control of the Defendant.** Any diminution of value of the real estate referenced in the Joint Venture Agreements within the Complaint represents a combination of an act of deity, market fluctuations, inability to locate and secure adequate laborers, declination of the real estate industry, and economic variations in general within the United States; all of which, the Defendant had no control over.

xxxiv. **"Flipping houses" is risky, speculative, and otherwise uncertain.** Substantial Factors associated with the activities related to purchasing, remodeling, and subsequently marketing the property are beyond the control of those that participate in such speculative efforts. The Real Estate Market represents a constantly changing commodity. Any terms or conditions associated with a previous or future purchase sales transaction, including but not limited to the sales price of the referenced real estate, has no bearing on the true market value of the home at any

other time than the date upon which that particular sales transaction occurred.

xxxv. **Res Judicata/Collateral Estoppel:** The doctrines of *res judicata* and *collateral estoppel* prohibit all parties and their privies from relitigating issues which were raised or could have been raised in a previous action. During the Defendant's prior Motion under FRCP60(b), the Court identified that each of the respective JV Agreements clearly contradict the Plaintiff's claim that she was entitled to a Trust Deed on either of the parcels of real property. Since the Court has ruled on this matter, any such claim(s) by the Plaintiff are unfounded. Paragraph Seven [¶7(a)] of the respective JV Agreements, specifically identifies no such Trust Deed was intended.

xxxvi. **Fraud Must be Particularly Pled:** At least one of the causes of action purportedly contained within the Plaintiff's Complaint are founded upon a common allegation that the Debtor/Defendant acted with a fraudulent intent or otherwise committed fraud in the procurement of specified promissory notes or personal loans. Plaintiff's pleading is vague and lacks the particularity required by Bankruptcy Rule 7009(b). The Complaint fails to meet the fundamental tests of properly pleading fraud under Rule 9(b), Fed. R. Civ. P. The Complaint also fails to state allegations of fact sufficient in particularity and clarity to fairly and reasonably advise the Debtor/Defendant of the "circumstances constituting fraud." Rule 9(b) F. R. Civ. P. *See:* In re

Edmonds, 924 F.2d 176, 180 (10th Cir. 1991)(Fed. R. Bankr. P. 7009,

incorporating Fed. R. Civ. P. 9(b)(1), requires that fraud be alleged with

particularity, including allegations of the "time, place and contents of

the false representations, the identity of the party making the false

statement and the consequences thereof"); In re Stone, 1984 Bankr.

LEXIS 4472 (bky. D. Utah 1984)(Section 523 requires that fraud be

pled with particularity); In re Eilertsen, 2003 Bankr. LEXIS 324 (Bky.

D. Utah 2003)(fraud must be pled with particularity under R. 7009).

The Complaint is deficient in setting forth any particular allegations

associated with any specific loan to which the Plaintiff claims the

Defendant acted wrongfully.

xxxvii. **Sanctions under Bankruptcy Rule 9011:** The present Adversary

Proceeding is not well grounded in fact, has been asserted without

sufficient investigation into the matter, and is otherwise being sought

primarily for the improper purposes to harass, cause unnecessary delay,

and/or needlessly increase the costs of litigation for the Defendant.

Plaintiff has failed to adequately investigate the relevant facts and legal

issues prior to commencing the present litigation. Thus, upon mounting

a successful defense, it is appropriate that the Court impose appropriate

sanctions under Bankruptcy Rule 9011, and other procedural

guidelines, against the Plaintiff, and her Legal Counsel, to assure

Defendant does not suffer any financial damages in the matter, and to

compensate the Debtor/Defendant for the additional expenses, plus an

additional amount to assure that Plaintiff, nor her Legal Counsel, does

not repeat such conduct in the future. In this sense, Defendant agrees

with the Plaintiff's request for "granting such other relief that the Court

deems just and proper under the circumstances" as claimed within the

Plaintiff's Prayer for Relief.

xxxviii.    **RECIPROCAL ATTORNEYS FEES/ §105 Relief:** Defendant

affirmatively asserts that as dictated through equitable principles, and

consistent with the Court's inherent powers within 11 U.S.C. §105,

given the totality of the circumstances surrounding the present case, no

substantial justification exists for the Plaintiff to commence or

prosecute the present litigation.  Thus, it is proper and just that the

Defendant be entitled to recoupment of all legal fees and expenses

incurred through defense of the present action.  It is inappropriate that

the answering Defendant be held responsible for payment of the legal

fees and expenses associated with defending the present litigation; and

therefore, the Plaintiff should be held accountable to compensate

Defendant for all such expenses incurred pursuant to 11 U.S.C.

§105. Furthermore,  the Plaintiff should be held accountable to

compensate Defendant for all such expenses identified within the

immediately preceding sentences pursuant to applicable federal and

Utah State Statutes, including but not limited to, 11 U.S.C. §105,

U.C.A., §78B-5-825, U.C.A. §78B-5-826, contractual principles, and

under equitable and common law principles of justice.

xxxix. **Discovery is Continuing in the matter**: The Defendant reserves the
right to add such further and other defenses as may be applicable on the basis
of the facts to be determined through full and complete discovery. Due to the
COVID-19 pandemic, the discovery phase in the present litigation has been
interrupted. The Plaintiff continues to refuse to cooperate in the discovery
process. She has failed to provide documents sought through the discovery
process; and, it is likely a Motion to Compel Discovery in the future will be
required to be addressed by the Court. The Defendant has been prevented from
conducting a deposition of the Plaintiff due to her bad faith conduct in the
mediation process, and continual refusal to cooperate in the scheduling of a
deposition in the interim.

4.      UNCONTROVERTED FACTS.

The parties have not yet reached agreement as to any uncontroverted facts.

**A. Defendant's Position:** Plaintiff and Defendant's Counsel have not been given
sufficient opportunity to discuss facts which could be deemed uncontroverted at
this time. Since Plaintiff did not establish verbal communication with Defendant's
Counsel until the day before the deadline established by the Court, there has been
no actual Parties Conference conducted pursuant to Paragraph 7 of the Order
Governing Scheduling and Preliminary Matters (Docket #22). The Court has
previously instructed the Parties to meet face-to-face to conduct the Parties
Conference in this matter, and no such meeting has taken place. The Pretrial
Order previously filed by the Plaintiff is merely the "working draft proposal"
prepared by Plaintiff's most recent terminated Legal Counsel in preparation for
the anticipated Parties Conference. Such drafted pleading has not been approved

or discussed between the parties prior to Plaintiff's submission to the Court. At the present time, there are no "Uncontroverted Facts" which have been stipulated to by the Defendant."

## 5.   CONTESTED ISSUES OF FACT.

**A. Defendant's Position:**  Similar to the reasoning for the lack of Uncontroverted Facts, the Plaintiff and Defendant's Counsel have not been successful in identifying the actual contested issues of fact which remain in the present case. Because no Parties Conference has occurred in the case, no discussion has taken place to successfully achieve agreement of the designated language for any contested issues of fact.

**B. Plaintiff's Position:**

**1.**   .   The contested issues of fact remaining for decision are:

A. By Plaintiff:

- On July 6, 2017, Danny Pacheco posted on a Facebook group forum requesting a $100,000 loan to close on a real estate deal associated with his company(ies).

- Plaintiffs spouse, Allen (Yuhung) Lin, responded to the Facebook post explaining that he would like to discuss the loan.

- Defendant informed Mr. Lin that he was seeking a $100,000 loan to assist in the purchase of a property located at 4020 E Colter St. in Chandler, Arizona

- Defendant also informed Mr. Lin that he was looking for an $85,000 loan to assist in the purchase of another property located at 1304 Dixie Trail in Raleigh, North Carolina.

- To assist the Lins in their investment decision, Danny provided two "Investor Packages" describing the rehabilitation project for the respective homes.

- Plaintiff entered into two (2) Real Estate Joint Venture Agreements with Defendants' businesses, 4020 Colter, LLC and 1034 Dixie, LLC. The Joint Venture Agreements outlined the relative duties of the parties.

- A Promissory Note was entered into between Plaintiff and 4020 Colter, LLC in conjunction with the $100,000 loan issued to it wherein 4020 Colter, LLC agreed to repay the principal balance plus 15% no later than October 13, 2017.

- A Promissory Note was entered into between Plaintiff and 1034 Dixie, LLC in conjunction with the $85,000 loan issued to it wherein 1034 Dixie, LLC agreed to repay the principal balance plus 15% no later than October 27, 2017.

- A Personal Guaranty was signed between Defendant and Mr. Lin guaranteeing the sum of $100,000.

- On July 10, 2017, Plaintiff wired $100,000 to Driggs Title Agency for the purchase of the Chandler Property.

- On July 25, 2017, Plaintiff wired $85,000 to AW Morris Law for the purchase of the Raleigh Property.

- On or about December 26, 2017, Defendant caused $35,000 to be paid to Plaintiff.

- Defendants' businesses breached the loan agreements by failing to repay the loans pursuant to the respective notes stated 3 months after in 2017.

- On October 9th 2018, Enya Lin acquired a default judgement against 4020 Colter LLC for recovering the amount of $76,000 together with interest accrued.

- On December 11th 2018, Enya Lin and his husband Allen Yuhung Lin acquired default judgement in the county of Maricopa and superior court of the state of Arizona against Daniel Pacheco in the same amount of $76,000 with interest accrued.

- These two subject homes were foreclosed upon by the priority lienholders and no funds were paid to Plaintiff from the sale of those homes.

- 

- Defendant, through his respective businesses, misrepresented the scope, duration, and cost of the rehabilitation, as well as his intent to repay the loans under the respective promissory notes.

- Defendant breached his fiduciary duties under the joint venture agreements by failing to perform his duties thereunder and by taking an in-kind salary.

- The Joint Venture Agreements stated that plaintiff's loans to be secured by deeds of trust. Defendant, however, failed to record the deeds of trust.

- The Joint Venture Agreements called for plaintiff's consent before additional debt was incurred and which was to be secured by the parcels of real property. Defendant obtained additional loans secured by the parcels which he did not disclose to plaintiff and of which plaintiff did not consent;

- The Joint Venture Agreement for the Arizona property indicated defendant would not obtain additional financing even with Plaintiff's consent in excess of $99,450 as to the first position lender and $15,000 for the second position lender;

- The Joint Venture Agreement for the North Carolina property indicated defendant would not obtain additional financing even with plaintiff's consent in excess of $32,943 as to the first position lender and $12,750 as to the second position lender;

- Defendant refinanced both properties without plaintiff's knowledge or consent and in amounts far in excess of the limits set forth in items 3 and 4 above;

- Plaintiff is owed the principal amount of $85,000 pursuant to the loan made for the North Carolina property plus interest;

- Plaintiff is owed the principal amount of $61,000 pursuant to the loan made for the Arizona property;

- The amounts owed by defendant to plaintiff are nondischargeable pursuant to Section 523 (2)(2)(A) oar 523 (a)(4).

- Danny Pacheco and his company Flip2Freedom Investment Inc. provided Enya Lin the Joint Venture Agreement of two properties in Arizona and North Carolina. Under the consensus, Danny should provide financial statement and transaction records for the expenses of these two house rehab to Enya Lin periodically. Also, the agreement prohibit new investors' involved with 4020 E Colter St and 1304 Dixie Trail, unless with a written consent from Enya Lin.
- For 1304 Dixie Trail Raleigh NC, Page 7 of the 1st set of Discovery requests answer from JLT Law, there was a 2nd investor/ Blue Mountain Assets LLC. Enya Lin never aware it from Danny Pacheco.
- In the scope of Subpoenas procedure, there are numerous transactions violated the contracts from Danny Pacheco and his companies' Wells Fargo, U.S. Bank and other Bank Organizations such as UCCU, for the usage of personal purposes such as Movie Entertainment, Walmart groceries shopping and cash withdraw activites.
- Danny Pacheco and his 414 Washington LLC sold the property on 414 Washington St. Located in Aberdeen Maryland 21001 on June 3rd 2017. However, the Wells Fargo Bank account entitled 414 Washington LLC shown remain activities of transferred funds to Pacheco K Custom Management and received check from Karen A Foutz during August 2017 to January 2018.
- On October 4th 2017, Danny wrote to Allen Yuhung Lin stated that he received a loan from Chlhaci Mezut , a resident live in Sugar Land TX and will pay full loan amount back to Enya Lin. Such related emails had been sent to Allen Yuhung Lin during the 3 months term period in 2017.
- Danny Pacheco worked with Thomas A. Payton Architect PLC for the Architectural Design of 4020 E Colter St. Danny failed to pay the service in full with a lien shown on Danny Pacheco's Bankruptcy Form106, Business Debt of Titus Brueckner & Levine for the amount $42,491.50.
- Danny Pacheco received a contractor bid from Bob Jenkins of VetsBuilt Contracting LLC and intend to renovate 4020 E Colter St. with the total price of $430,050. However, none of the work had been performed by Bob Jenkins and no bank account record shown business transaction to him in related to house rehab project.

- On November 7 2017, Danny Pacheco wrote an email to Allen Yuhung Lin. He explained in the email that he can get $140-170 k from Stewart Pope and $70-100k from Karen Foutz for Enya's loan payment.
- On Feb 28th 2018, Danny wrote an email to Richard Hundley, Enya Lin's representing attorney in AZ, stated he was still willing to pay the loan of 4020 E Colter investment.
- On October 8th 2018 before 4020 E Colter St. gone foreclosure, Allen Yuhung Lin went to the property and found out there was never rehab activities performed.

## 6. STIPULATIONS.

The parties have not yet reached any stipulations.

**A. Defendant's Statement: There have been no stipulations agreed upon between Plaintiff and Defendant's Counsel. Plaintiff has been previously informed of her affirmative duty to correct her prior statements to the Court in this regard.** Plaintiff has been previously requested to immediately amend the prior filed Pretrial Order(s) to inform the Court that "Plaintiff acknowledges there have been absolutely no stipulations reached between the Parties to the litigation. All such statements and content previously identified within Paragraph 6 of the filed Pretrial Order(s) are hereby withdrawn by the Plaintiff." However, Plaintiff has refused to acknowledge such prior conduct. Plaintiff has been further notified that her failure to do so immediately would be brought to the Courts attention at the scheduled Pretrial Hearing; and that Defendant's Counsel reserves all rights to seek appropriate sanctions against Plaintiff for her prior submissions to the Court.

## 6. WITNESS.

### A. By Plaintiff :

1. Yaping Lin

2. Danny Zuriel Pacheco

3. Thomas A. Payton Thomas A. Payton Architect PLC

4. Bob Jenkins Manager Partner VetsBuilt Contracting LLC

5.  Stewart Pope

6.  Karen Foutz

7.  Allen Yuhung Lin

**B: By defendant:**  Because the Plaintiff failed to abide by the Court Order to
Appear or Appoint Substitute Counsel prior to the established deadline, there was no indication
of the Plaintiff's intentions regarding the current litigation until the literal eve of the deadline to
file a Proposed Pretrial Order. Therefore, none of the potential witnesses intended to be called by
the Defendant have been currently identified. Defendant intends to call the Plaintiff as a witness;
may possibly call the Defendant; and, reserves the right to call any witness on a rebuttal basis.
Further, Defendant reserves the right to object to the testimony of any witness on any legally
recognized basis.

The Discovery Requests previously propounded upon Plaintiff by the Defendant
specifically requested identification of all witnesses she intended to call at trial in the case. She
failed to identify any such witnesses. Defendant's Counsel has previously requested that
Plaintiff immediately identify where in her prior Discovery Responses she has identified any of
the witnesses appearing in Paragraph 7 of the Pretrial Order she has filed with the Court.
Plaintiff has also been informed that it is likely Defendant's Counsel will be filing a Motion to
Exclude any witness whom Plaintiff has not previously properly identified in response to the
Defendant's Discovery Requests. Furthermore, Plaintiff has been informed that she has an
obligation to provide all appropriate contact information for all such witnesses. She has not
complied. Plaintiff has an obligation to provide Supplemental Disclosures under the applicable
Bankruptcy Rules, and has not complied with such responsibilities. Plaintiff has been informed
the Amended Pretrial Order should provide proper contact information for each and every

witness she has identified. She has refused to do so. Plaintiff has been informed that all of the above does not overcome the fact that the Defendant reserves the right to object to any and all witnesses on any legal basis.

### 7. Exhibits:

**A. Defendant's Statement:** The Defendant DOES NOT stipulate to the admissibility of any of the Exhibits identified below. Defendant also objects to the procedures the Plaintiff has previously initiated to provide the Court with copies of documents that the Defendant, and his Counsel, have not been given the opportunity to object to the same. Plaintiff has previously failed and otherwise refused to provide copies of such documents contained within the list of Exhibits which were specifically included in the Defendant's Discovery Requests. Defendant reserves the right to exclude and otherwise object to the admissibility of any such Exhibit on any legally recognized basis.

Defendant's Counsel has also notified Plaintiff of his Objection by providing her with the following statement: "You have violated proper protocol in providing the Court with copies of any Exhibits before they have been properly submitted, marked, offered, and accepted through appropriate trial procedures. By doing so you have compromised the legal process and placed the Judge in a position of prejudice. The Defendant DOES NOT stipulate to the admissibility of any of the Exhibits you have identified in the proposed Pretrial Order at this time."

B. By Plaintiff:
- Ex. 1- Danny Pacheco posts on Facebook

- Ex. 2 - 4020 E Colter St. AZ Investment Package
- Ex. 3 - 1304 Dixie Trl. NC Investment Package
- Ex. 4 - JV agreement 4020 E Colter AZ
- Ex. 5 - JV Agreement NC 1304 Dixie Trl
- Ex. 6 - Deed of Trust 4020 E Colter AZ
- Ex. 7 - Deed Of Trust 1034 Dixie Raleigh Dr NC
- Ex. 8 - Promissory Notes of 2 properties
- Ex. 9 - Personal Guarantee 100k from Danny Pacheco
- Ex. 10 - Danny Pacheco Email communications
- Ex. 11- Danny Pacheco email to Richard 2018
- Ex. 12- 4020 E Colter 2018 10-09 Judgement Maricopa AZ court
- Ex. 13- 4020 E Colter Deed to Sound Capital
- Ex. 14-Phoenix Contractor's Bid 4020 Colter VetsBuilt
- Ex. 15-Vetsbuilt - Subpoena Response
- Ex. 16-Thomas Payton 4020 E Colter Architect
- Ex. 17- Danny Pacheco bankruptcy Form 106
- Ex. 18- 4020 Colter payment to AZ Instant Funding
- Ex. 19- 4020 Colter Trustee Sale
- Ex. 20- Allen Lin Visit to 4020 Oct 2018
- Ex. 21-Danny Pacheco Interrogation 2020
- Ex. 22-Danny Pacheco Deposition Sep 2020
- Ex. 23-Danny Pacheco 414 Washington Bank account activities
- Ex. 24-1304 Dixie Trail First Rehab Lending
- Ex. 25-1304 Dixie Trail Final Settlement
- Ex. 26-Danny Email loan from Chlhaci
- Ex. 27-Utah Community Credit Union
- Ex.28-Bank Subpoenas_233 Bynun LLC_Account_Last_Four_Numbers_5829
- Ex.29-Bank Subpoenas_414 Washington
  LLC_Account_Last_Four_Numbers_5811
- Ex.30-Bank Subpoenas_Danny Z
  Pacheco_Account_Last_Four_Numbers_2640
- Ex.31-Bank Subpoenas_Danny Pacheco_Account_Last_Four_Numbers_9084
- Ex.32-Bank Subpoenas_Flip2freedom Investments
  INC_Account_Last_Four_Numbers_5803
- Ex.33-Bank Subpoenas_Kellyann F Pacheco_Last_Four_Numbers_7522
- Ex.34-Checks

DATED: March 22, 2021.

_____ *Plaintiff*

_____ *Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 22, 2021, a true and correct copy of the foregoing **CERTIFICATE OF SERVICE** was served as follows:

**By Electronic Mail [CM/ECF Service] Notice:**

- Jory L. Trease caseinfo.jtbankruptcy@gmail.com; jorytrease@msn.com; janci.jtbankruptcy@gmail.com; myecfemail.jtbankruptcy@gmail.com; r47629@notify.bestcase.com
- United States Trustee USTPRegion19.SK.ECF@usdoj.gov

**By U.S. Mail:**

_____

# Proposed Pretrial Order

# Witness Modification

### 7. WITNESS.

#### A. By Plaintiff :

- Thomas A. Payton Thomas A. Payton Architect PL

  2834 E. Corrine Dr. Phoenix AZ 85032. Telephone: 602-478-3203 tom@taparchitect.com
  Mr. Payton was requested by Danny Pacheco to design 4020 E Colter St's architecture plan
  and have the information regarding the construction documents and schematic design.

- Bob Jenkins Manager Partner VetsBuilt Contracting LLC

  Vetsbuilt Contracting: P.O. Box 5673, Carefree, AZ 85377  Telephone: 978-578-0647
  bob@vetsbuit.com]
  Mr. Jenkins is a contractor who provided a bid for labor and material for the Arizona
  Property. Mr. Jenkins will likely have information about the amount of labor and work
  dedicated to the Arizona property.

- Stewart Pope

  828 Shavey Lane Springville, UT 84663  Telephone:714-926-3405 Stupope@gmail.com
  Stewart has information of Defendant's solicitation to him to become private investors to
  assist in paying back the loan to Plaintiff.

- Karen Foutz

  10146 Bodger St., El Monte, CA 91733 Telephone: 626-602-4065
  Karen has information of Defendant's solicitation to him to become private investors to
  assist in paying back the loan to Plaintiff.

- Allen Yuhung Lin

  8203 W Oraibi Dr. Apt2085 Peoria, AZ 85382  Telephone: 480-719-0577
  allen.yhlin@gmail.com

Mr. Lin is Plaintiff's spouse and acted as agent for Plaintiff in negotiating, managing, and conversing with Defendant. Mr. Lin will also testify about the allegations of the Amended Complaint including facts pertaining to his meeting and communications with Defendant, Defendant's solicitations for moneys, representation made by Defendant, site inspections of the subject properties, investigatory work pertaining to the lack of development of the subject properties, and other facts pertinent to Plaintiff's claims.

- Mark Simpson, MCP Management Group Inc.

  6500 Old Chesterbrook Rd. Mclean, VA 22101 Telephone:202-368-8835
  Mark Simpson from MCP Management Group Inc has information of Defendant's solicitation to become private investors to 4020 E Colter St AZ and testify the business debt of $65,000

- First Property Investments, Inc.

  3075 S Ivy Street Nampa ID 83686  Telephone:208-546-8566
  First Property Investments, Inc. has information of Defendant's solicitation to become private investors to 4020 E Colter St AZ and testify the business debt of $52,972

- Charlie Blue Investments, Inc.

  Unit 7300 BOX 0400 DPO, AP 96521 Telephone:571-455-7428
  Charlie Blue Investments, Inc has information of Defendant's solicitation to become private investors to 4020 E Colter St AZ and testify the business debt of $45,000

- Blue Mountain Assets, LLC.

  11204 Montgomery Blvd NE,#149 Albuquerque, NM87111
  Blue Mountain Assets, LLC has information of Defendant's solicitation to become private investors to 1304 Dixie Tr. Raleigh NC and testify the business debt of $35,000

DATED: 4/14/2021.

_____ Plaintiff

_____ Defendant